## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

JUAN M. MOJICA-RIVERA

    Plaintiff

            v.

UNITED STATES OF AMERICA

    Defendants

**Civil No. 07-1283 (SEC)**

### OPINION & ORDER

Pending before this Court is Petitioner Juan M. Mojíca-Rivera's ("Mojíca-Rivera" or "Petitioner") Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C.A. § 2255, in connection with Criminal Case No. 96-039 (SEC) (Docket # 1). Petitioner further moves for Leave to Invoke Discovery (Docket # 2) and to Expand the Record (Docket # 3). The United States of America ("United States" or "Government") opposed all three motions (Docket # 10) and Petitioner replied (Docket # 11). After considering the parties' filings and the applicable law, Petitioner's motions are **DENIED.**

### Factual and Procedural Background

On February 21, 1996, Petitioner was indicted on six (6) counts by a federal Grand Jury, along with two other co-defendants. Crim No. 96-039, Docket # 27. Specifically, Mojíca-Rivera was charged with (1) aiding and abetting a bank robbery and incidental crimes resulting in death in violation of 18 U.S.C. §§ 2, 213 (a), (d), & (e) ("Count One"); (2) aiding and abetting in the use and carrying of firearms during a bank robbery in violation of 18 U.S.C. §§ 2, 924(c)(1) & (3) ("Count Two"); (3) aiding and abetting in a carjacking resulting in death in violation of 18 U.S.C. §§ 2, 2119(3) ("Count Three"); (4) aiding and abetting in the use of firearms during a carjacking in violation of 18 U.S.C. §§ 2, 924(c)(1) & (3); (5) being a fugitive in possession of a firearm in violation of 18 U.S.C. §§ 2, 922(g), 924(a)(2) ("Count Five"); and (6) aiding and abetting in the possession of a semi-automatic assault weapon, in

2

violation of 18 U.S.C. §§ 2, 922(v)(1), 924(a)(1)(B) ("Count Six"). Id.; see also United States v. Mojíca-Rivera, 435 F.3d 28, 30 (1st Cir. 2006). A jury convicted Mojíca-Rivera of all six counts on June 6, 1997, after a five day trial. Mojíca-Rivera, 435 F.3d at 30. Five different attorneys represented Petitioner between December 3, 1997 and June 13, 2000, three of which withdrew upon Petitioner's request. Id. at 30-31.

On August 4, 2000, Mojica filed a *pro se* motion for new trial, based upon juror bias, ineffective assistance of counsel, and that one of the Government's witnesses, Luis Nevarez-Marrero ("Nevárez"), had made statements to FBI agents in January 1996 and given testimony to the grand jury that would have affected his credibility at trial. Crim. No. 96-00039-1, Docket # 297. On November 9, 2000, this Court denied Mojica's request as untimely under FED. R. CRIM. P. 33, which provides that a motion for new trial on any grounds other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty. Crim No. 96-00039-1, Docket # 312. Specifically, this Court held that Mojica's motion was untimely insofar as it was not based on new evidence, and was filed over three years after his conviction. Id. On even date, Mojica's new counsel filed a supplemental motion, reasserting Mojica's previous arguments, and alleging he obtained new impeachment evidence against Nevarez. Id. at Docket # 309. Thereafter, Mojica moved for reconsideration on this Court's denial of his *pro se* motion for new trial. Id. at Docket # 319. However, said request was denied. Id. at Docket # 320.

On August 23, 2001,[1] Petitioner was sentenced to imprisonment for life on Counts One and Three, for 120 months on Count Five, and for 60 months on Count Six, all to be served concurrently. Crim. No. 96-00039-1, Docket # 339. Petitioner was further sentenced to 120 and 240 months of imprisonment on Counts Two and Four respectively, to be served consecutively, both to each other and to the term imposed with respect to Counts One, Three,

---

[1] The sentencing hearing was delayed on numerous occasions pursuant to the parties' requests for continuances. Also, Mojica changed counsel on several occasions.

Five and Six. Id. Petitioner was also sentenced to five year terms of supervised release for Counts One and Three and to 3 year terms of supervised release for Counts Two, Four, Five and Six, all to be served concurrently with each other. Id. As part of this supervised release, the Court ordered Petitioner to "submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter." Mojíca-Rivera, 435 F.3d at 31. Additionally, the court imposed a Special Monetary Assessment of three hundred dollars ($300), and Restitution in the amount of one thousand, found hundred and forty-five dollars ($1,445). Crim. No. 96-00039-1, Docket # 339.

On appeal, Petitioner argued to no avail (1) that "the district court erred in denying as untimely his motion for a new trial," (2) that he should be re-sentenced under the Supreme Court's decision in United States v. Booker, 534 U.S. 220, 125 (2005), and (3) that "under United States v. Meléndez-Santana, 353 F.3d 93 (1st Cir. 2003), the district court improperly delegated its authority to the probation officer regarding the number of drug tests Mojíca must undergo during supervised release." Mojíca-Rivera, 435 F.3d at 35. Petitioner's writ of *certiorari* to the United States Supreme Court was also denied.

Petitioner now seeks relief under 28 U.S.C. § 2255, claiming ineffective assistance of counsel. Docket # 1. He further moves for leave to conduct discovery (Docket # 2), and to expand the record (Docket # 3). In opposition, the United States argues that Petitioner's claims are conclusory, vague, and fail to show that but for counsels' unprofessional errors, his sentence would have been less severe. See Docket # 10. As such, the United States asks this Court to summarily dismiss Petitioner's section 2255 motion, as well as his requests for discovery and expansion of record. Id.

**Standard of Review**

Federal District Courts have jurisdiction to entertain motions under section 2255 of title 28 of the United States Code when a petitioner is incarcerated by sentence of a federal court. See 28 U.S.C. §2255. Section 2255 provides four grounds on which a federal prisoner

may challenge his sentence: (1) the sentence imposed is in violation of the Constitution and/or laws of the United States; (2) the court lacked the jurisdiction to impose the sentence; (3) the sentence exceeded the maximum term authorized by law; or (4) the sentence is otherwise subject to collateral review. See id. Should a court find any of these errors, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." Id.

The petitioner bears the burden of establishing, by a preponderance of the evidence, that he is entitled to relief. United States v. DiCarlo, 575 F.2d 952, 954 (1ˢᵗ Cir. 1978). With respect to petitions that are "inadequate on [their] face, or although facially adequate, [are] conclusively refuted as to the alleged facts by the files and records of the case, *summary dismissal* is appropriate." Lema v. U.S., 987 F.2d 48, 51 (1ˢᵗ Cir. 1993) (internal citations omitted).

**Applicable Law and Analysis**

In his motion, Petitioner claims that his counsels' assistance at the trial, sentencing, and appellate level was ineffective. Prior to addressing the same, this Court notes that from his trial in 1997 until mid-2000, Petitioner was assigned five different attorneys, which directly affects this Court's review of his allegations of ineffective assistance of counsel. On this front, the record shows that this Court granted trial counsel Carlos Perez Olivo's ("Perez-Olivo" or "trial counsel") motion to withdraw as counsel on December 29, 1997. Crim. No. 96-00039-1, Docket # 211. On March 6, 1998, Petitioner filed a *pro se* motion to substitute recently appointed counsel Epifanio Morales. Id. at Docket # 220. This Court granted Petitioner's request, and on December 10, 1998, Edgar Vega-Pagan was assigned as counsel. Id. at Docket # 258. However, on February 17, 1999, Vega-Pagan's request to withdraw as counsel was granted, and one day later, Wilfredo Rios-Mendez was assigned as new counsel. Id. at Dockets ## 265-266. On September 21, 1999, Petitioner filed another *pro se* motion requesting substitution of counsel. Id. at Docket # 280. On June 8, 2000, Rios-Mendez was terminated as counsel, and shortly thereafter, Arturo Luciano-Delgado ("Luciano-Delgado")   was

appointed as counsel to Petitioner, and represented him during sentencing. Id. at Dockets ## 292 & 294. Thus Petitioner's ineffective assistance of counsel claims address several attorneys that represented him at one point or another during the criminal proceedings.

In essence, Petitioner charges that trial counsel Perez-Olivo failed to interview witnesses, to request the exclusion of jurors that were victims of crimes, to challenge the hearsay testimony of co-defendant Nevarez, and to make an opening statement. According to Petitioner, prejudicial evidence regarding his past criminal history was improperly introduced at trial, and trial counsel failed to object to its admissibility. Petitioner further contends that during his sentencing hearing, Luciano Delgado failed to object to the Pre-sentence Report ("PSR") under United States v. Booker, 543 U.S. 220 (2005), and Apprendi v. New Jersey, 530 U.S. 466 (2000). Petitioner also contends that appellate counsel, Allan D. Campbell, failed to raise violations to the confrontation clause, prosecutorial misconduct,[2] insufficiency of evidence, and Booker claims.[3] Lastly, Petitioner alleges actual innocence.

In analyzing Mojíca's arguments, it should be noted that the First Circuit has consistently held that "[i]ssues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion." Singleton v. U.S., 26 F.3d 233, 240 (1st Cir. 1994) (citing Dirring v. U.S., 370 F.2d 862, 864 (1st Cir. 1967)). Thus, any issue seen on direct appeal by the First Circuit, relating to Crim. No. 96-00039-1 (SEC), is precluded from being considered by this Court through the use of a 28 U.S.C. § 2255 motion. See id. Similarly, non-constitutional claims not raised on direct appeal are precluded "absent exceptional circumstances." Knight v. U.S., 37 F.3d 769, 772 (1st Cir.1994); see also Singleton, 26 F.3d at 239 (deeming petitioner's claim "defaulted" when "it was neither raised before the trial court nor on direct appeal"); Argencourt v. United States, 78 F.3d 14, 16 n.1 (1st Cir. 1996) (rejecting arguments

---

[2] Mojíca alleges, among other issues, that the Government failed to produce certain discovery, specifically, the clothes he was wearing the day he was arrested.

[3] Petitioner's claims of double jeopardy fails insofar as he was not accused of the same crime twice.

"not raised in the district court").

The "general rule" is that "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." <u>Massaro v. United States</u>, 538 U.S. 500, 504 (2003). This heightened showing comports with the Supreme Court's well established rule that "§ 2255 is not a substitute for direct appeal." <u>Knight</u>, 37 F.3d at 772; <u>see also</u> <u>Stone v. Powell</u>, 428 U.S. 465, 478 n.10 (finding that "there has been no change in the established rule with respect to nonconstitutional claims. The writ of *habeas corpus* and its federal counterpart, 28 U.S.C. s. 2255, 'will not be allowed to do service for an appeal'") (citing <u>Sunal v. Large</u>, 332 U.S. 174, 178 (1947)). Furthermore, it is well-settled that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived." <u>U.S. v. Jiminez</u>, 498 F.3d 82, 88 (1st Cir. 2007) (citing <u>United States v. Zannino</u>, 895 F.2d 1, 17 (1st Cir.1990)). Therefore, § 2255 "does not exist to correct erroneous factual determinations or to challenge the sufficiency of the evidence or to correct errors which should have been brought to the attention of the trial court or the appellate court on direct appeal." <u>Neeley v. United States</u>, 405 F. Supp. 1186 (W.D. Va. 1975) (citing <u>Sunal v. Large</u>, 332 U.S. 174, 67 S. Ct. 1588, 91 L. Ed. 1982 (1947).

In light of the foregoing, Petitioner's claim of ineffective assistance of counsel withstands procedural preclusion. Nevertheless, Petitioner's claims regarding sentencing were previously raised on appeal, and are thus barred from consideration by this Court.[4] Similarly,

---

[4] Notwithstanding, Petitioner's claims that his counsel at sentencing failed to object to the PSR and to argue for a reduction in his sentence are also contrary to the record. Crim. No. 96-00039-1, Docket # 373. During sentencing, although Petitioner's counsel accepted the initial PSR, he expressly requested a reduction in sentence due to mitigating factors. <u>Id.</u> As a matter of fact, the Court congratulated both counsel on a job well done arguing their respective positions. <u>Id.</u> Moreover, even if counsel committed the errors alleged by Petitioner, for him to succeed on this motion, he must demonstrate by a preponderance of evidence that his counsel's alleged faults brought his assistance below the standard of ordinary reasonableness, and that he was prejudiced by this deficiency. Petitioner cannot prove prejudice without detailed arguments and specific citations that support his arguments. More so considering that Mojíca's sentencing arguments were addressed and rejected on

Petitioner's claims as to plea negotiations, unduly prejudicial evidence and testimony, and prosecutorial misconduct were not raised on appeal and thus, are procedurally defaulted.

Lastly, the First Circuit has made it clear that <u>Apprendi v. New Jersey</u>,[5] 530 U.S. 466 (2000), and its progeny do not apply retroactively to cases on collateral review. <u>Sepúlveda v. U.S.</u>, 330 F. 3d 55 (1st Cir. 2003) (holding that <u>Apprendi</u> does not apply retroactively to cases upon collateral review); <u>see also</u> <u>Márquez v. U.S.</u>, 91 Fed. Appx. 162 (1st Cir. 2004)(unpublished)(same); <u>Cirilo-Muñoz v. U.S.</u>, 404 F. 3d 527 (1st Cir. 2005) (holding that having resolved that <u>Apprendi</u> does not apply retroactively, "resolves any comparable <u>Blakely</u>-like claim in this circuit."). <u>Blakely v.Washington</u>, 542 U.S. 296 (2004), which was merely an application of <u>Apprendi</u>, is also unavailable to Petitioner's collateral attack to his sentence. <u>See</u> <u>Sepúlveda</u>, 330 F. 3d 55; <u>Márquez</u>, 91 Fed. Appx. 162. Notwithstanding, Petitioner does not argue that his sentence was enhanced beyond the statutory maximum; and certainly it was not, as the maximum sentence for Count I of the indictment alone is life imprisonment, and Petitioner was found guilty on all 6 counts. <u>See</u> 18 U.S.C. § 2113(e). Thus his arguments on this front on appeal would have likely been considered harmless error.

*Appellate counsel*

Petitioner alleges that appellate counsel failed to object to violations to the confrontation clause, or raise prosecutorial misconduct,[6] insufficience of evidence, and <u>Booker</u> claims.  To establish ineffective assistance of appellate counsel, a defendant "must

---

direct appeal.

[5] <u>Apprendi v. New Jersey,</u> 530 U.S. 466 (2000), held that other than the fact of a conviction, facts that would increase a sentence beyond the statutory maximum, had to be found by the jury beyond a reasonable doubt.

[6] Mojíca alleges, among other issues, that the Government failed to produce certain discovery (disclose material and favorable evidence), specifically, the clothes he was wearing the day he was arrested. He further contends that they used Nevarez as their star witness despite knowing about his checkered past.

first show that his counsel was objectively unreasonable." <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000). Petitioner bears a difficult task since, to be effective, "appellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select among them in order to maximize the likelihood of success on appeal." <u>Id.</u> at 288. Moreover, even if Petitioner succeeds in making that showing, he must still "show a reasonable probability that, but for his counsel's unreasonable failure to [raise a particular issue], he would have prevailed on his appeal." <u>Id.</u> at 285. In applying this test, courts "presume that the result of the proceedings on appeal is reliable . . . and . . . require [the defendant] to prove the presumption incorrect in his particular case." <u>Id.</u> at 287. "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." <u>Gray v. Greer</u>, 800 F.2d 644, 646 (7th Cir. 1986).

In this case, Mojíca's appellate counsel raised several claims of error, including those premised on the district court's denial of Petitioner's motions for new trial,[7] and the need for re-sentencing under <u>Booker</u>. Therefore, Petitioner's arguments on this front fail. Notwithstanding, even assuming that appellate counsel failed to set forth additional claims on appeal, *i.e.* prosecutorial misconduct and insufficiency of evidence, the First Circuit denied Petitioner's appeal, and stated: "after reviewing the record, we have no doubt that the government's case against Mojíca was so strong that even if the jury discredited Nevárez's testimony, it still would have convicted Mojíca. The district court thus correctly found that the new evidence would not warrant a new trial." <u>Mojíca-Rivera</u>, 435 F.3d at 33, n.5. Thus allegations of prosecutorial misconduct[8] and insufficiency of evidence would have been futile.

---

[7] The First Circuit addressed the allegations set forth in Mojíca's first motion for new trial, to wit, juror bias, ineffective assistance of counsel, and Nevárez's allegedly false statements.

[8] Federal *habeas corpus* review of prosecutorial misconduct claims is "quite limited." <u>Tankleff v. Senkowski</u>, 135 F.3d 235, 252 (2nd Cir. 1998). In order to prevail on a claim of prosecutorial misconduct, a Petitioner must demonstrate that the prosecutor's conduct was "so infected the trial with unfairness as to make the resulting conviction a denial of due process." <u>Darden v. Wainwright</u>, 477

Also, since Mojíca's arguments regarding violations to the confrontation clause hinge on the trial court's alleged violation of his Sixth Amendment right to confrontation by admitting hearsay evidence (Nevárez's testimony), in all likelihood, the appellate court would have found any error on this front harmless in light of the overwhelming amount of evidence against him. As such, Mojíca fails to show that but for his appellate counsel's unreasonable failure to raise the afore-mentioned claims, he would have prevailed on his appeal.

*Trial Counsel*

Petitioner also faces a difficult task in showing ineffective assistance of counsel at the trial level. Not only is "[t]he burden on the petitioner to demonstrate ineffective assistance by a preponderance of the evidence" Lema, 987 F.2d at 51, but the standard of review for an attorney's performance is "very forgiving." See U.S. v. Theodore, 468 F.3d 52, 58 (1st Cir. 2006) (citing Delgado v. Lewis, 223 F.3d 976, 981 (9th Cir. 2000)).

The Sixth Amendment to the Constitution of the United States provides in pertinent part that: "[i]n all criminal prosecutions, the accused shall enjoy the right to ... have the Assistance of Counsel for his defence (sic)." U.S. CONST. amend. VI. Moreover, the legal assistance envisioned by the Amendment is not satisfied by merely having a lawyer present alongside the defendant during trial; in order to comply with the Sixth Amendment guarantee, counsel must provide "effective assistance." Strickland v. Washington, 466 U.S. 668, 685-686 (1984). A convicted defendant who questions the validity of the criminal proceeding against him by way of claiming ineffective assistance of counsel must meet the two-part test established by the U.S. Supreme Court in Strickland. This requires the criminal defendant to "establish that (1) 'counsel's representation fell below an objective standard of reasonableness' and (2) 'a

---

U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986). The prosecutorial misconduct must be so serious and blatant that it "calls into doubt the fundamental fairness of the judicial process." United States v. Ortiz de Jesus, 230 F.3d 1, 4 (1st Cir. 2000). The factors a court considers include: (1) the severity of the misconduct; (2) the measures adopted to cure the misconduct; and (3) the certainty of conviction absent the improper statements. Tankleff, 135 F.3d at 252. Petitioner has failed to develop any argument in favor of this claim aside from conjecture, thus, it lacks merit.

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (quoting Smiley v. Maloney, 422 F.3d 17, 20 (1st Cir. 2005) (quoting Strickland, 466 U.S. at 684)).

With respect to the first part of the test, the U.S. Supreme Court has stated that there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 700. Furthermore, the Court's evaluation of Counsel's performance must be highly deferential. Id. at 691. On this front, the Court noted that "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. Therefore, to make a fair assessment of an attorney's performance, courts should attempt to eliminate the distorting effects of hindsight. Id.

Additionally, even if a criminal defendant overcomes this rather formidable obstacle, his ineffective assistance claim will not prosper unless he can also establish the second prong of the test. See id. at 700. Specifically, Strickland's holding also requires a showing that counsel's deficient performance prejudiced the defendant. Id. at 694. That does not mean, however, that the court must address the two prongs of the test in the order above, or even analyze both. If the court is satisfied that the defendant cannot establish either that counsel was deficient or that such deficiency prejudiced the defendant, it may dispose of the claim without further ado. See id. at 697.

As a preliminary matter, this Court notes that with respect to ineffective assistance of counsel claims, "the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such. If counsel is a reasonably effective advocate, he meets constitutional standards, irrespective of his client's evaluation of his performance." U.S. v. Cronic, 446 U.S. 648, 657 (1984). Thus, Petitioner's current assessment of his attorney in an affidavit (Docket # 1-2) has no bearing on the present analysis. See id.

**Civil No. 07-1283 (SEC)**                                                    11

In his motion, Petitioner claims that he requested trial counsel Pérez-Olivo to ascertain whether there was a deliberate inclusion of victims in the jury panel, and to request the removal of said jurors on grounds of bias. However, he does not provide the jurors names, nor specific record citations in support of this argument. Moreover, upon reviewing the jury trial transcripts, it is apparent that the Court meticulously ascertained each juror's ability to hear the evidence, and render an impartial and fair verdict. See Docket # 241, Tr. 6/2/97. As a matter of fact, the Court excused Juror 10 on these grounds (See Docket # 241, p. 28-30, Tr. 6/2/97), and Juror 42, a victim of a shooting, was excused pursuant to Petitioner's counsel request (Docket # 241, p. 57, Tr. 6/2/97). Additionally, as the Government points out, Petitioner's counsel's peremptory challenges may have removed other members of the jury panel who were victims of crimes.

Therefore, Petitioner's argument on this front is grounded not in fact, but rather in conjecture and speculation that allegedly biased jurors remained in the jury panel, despite extensive evidence to the contrary. Moreover, the Court adequately informed the jury that Petitioner was entitled to a presumption of innocence; that anything they may have seen or heard outside the courtroom should not be considered; that they should not form an opinion as to guilt or innocence until all the evidence had been presented; that their verdict should be based solely on the evidence, not prejudice or sympathy; and that they should impartially consider the evidence (Docket # 241, p. 72, 74-76, Docket # 241-2, p. 1-4), and "[t]here is a presumption that jurors follow the instructions they are given." Resto Diaz v. United States, 182 F. Supp. 2d 197, 205 (D.P.R. 2002) (citing Richardson v. Marsh, 481 U.S. 200, 206, 211 (1987)). Insofar as Petitioner does not specify the names and circumstances related to bias, this Court finds that he has not shown any basis to find that his trial counsel's decision failed to meet an objective standard of reasonableness, or that the decision resulted in prejudice. See Alicea-Torres v. United States, 455 F. Supp. 2d 32, 48 (D.P.R. 2006); Resto Diaz, 182 F. Supp. at 205.

Petitioner also avers that trial counsel failed to interview witnesses. In order to prevail

on this front, Petitioner needs to overcome the presumption that Pérez-Olivo's decision not to call these witnesses would be considered sound trial strategy. Lema, 987 F.2d at 55 (stating that the "decision to interview potential witnesses, like the decision to present their testimony, must be evaluated in light of whatever trial strategy reasonably competent counsel devised in the context of the particular case"); see also Walker v. Henderson, 492 F.2d 1311, 1314 (2d Cir. 1974) (stating that the decision to call or bypass particular witnesses is peculiarly a question of trial strategy which courts will practically never second guess).

Mojíca argues that Pérez-Olivo failed to interview witnesses Pérez, Nevárez, and Sergio R. Ortiz Ortiz. Specifically, Mojíca posits that he told his counsel about Ortiz's possible exculpatory testimony. In support of said allegation, Mojíca submits a sworn statement by Ortiz. Docket # 1-2. Therein, Ortiz stated that on June 16, 1997, Nevárez gave him a letter addressed to Mojíca. Ortiz further declared that in said letter, Nevárez apologized to Mojíca, and admitted that he never saw Mojíca on the street the day they were arrested. Allegedly, the letter also stated that Nevárez admitted to following the police's instructions regarding Mojíca's involvement, especially in light of the plea agreement offered by the Government. Lastly, Mojíca averred that the Government did not use Pérez's testimony because it would contradict Nevárez's version of the facts.

This Court first notes that Ortiz's affidavit is dated July 24, 1997, that is, almost two months after Mojíca, Nevárez, and Pérez's conviction. Moreover, it refers to an alleged letter sent by Nevárez to Mojíca on June 16, 1997, ten days after their conviction. Mojíca does not show that his counsel knew about said letter, and failed to move for a new trial on said grounds. Furthermore, even assuming that trial counsel knew about the affidavit, which Petitioner fails to properly show, the letter was sent, and the affidavit was sworn, after the trial concluded. Insofar as the alleged exculpatory evidence was obtained after trial, Petitioner's argument on this front does not weigh against Pérez-Olivo's performance at trial.

Also, Petitioner has not shown that any of his subsequent counsel knew about Ortiz's affidavit. Except for possibly Luciano-Delgado, who moved for a new trial based on new

evidence, none of Petitioner's counsel knew about the alleged new evidence.[9] Petitioner
further fails to show that the foregoing would entail a less harsh sentence in light of the
overwhelming evidence against him. As previously noted, in considering Petitioner's
objections to Nevárez's testimony, the First Circuit pointed out that the Government's case
against Mojíca was so strong that even if the jury discredited Nevárez's testimony, it would
still have convicted him. Upon reviewing the record, this Court notes that police officers
Edwardo Rivera-Mercado, Manuel Gonzalez-Pagan, and Francisco Hernandez-Cruz testified
that after the vehicle (Mitsubishi Montero) Mojíca and other men were traveling in to escape
the bank robbery site crashed into an embankment, they saw Mojíca, and two other men,
running into the nearby woods. See Docket # 243, pp. 13-14, 23-25, 38. Mojíca was carrying
a weapon (AK-47). Id. Gonzalez-Pagan stopped and arrested him, and seized drugs, magazines
and other articles from Mojíca. Id. at p. 25. Therefore there is ample evidence against Mojíca
aside from Nevárez's testimony. Thus Petitioner has not presented any issue to establish that
counsel's judgment could have been constitutionally defective, amounting to ineffectiveness
and from which petitioner was devoid of professional assistance. Rodriguez v. United States,
2003 U.S. Dist. LEXIS 16323 (D.P.R. Sept. 9, 2003).

    Furthermore, this Court notes that Petitioner fails to set forth a sworn statement by
Pérez, or argue what exculpatory evidence, if any, Pérez and Ortiz would have provided. As to
Ortiz, the alleged letter cited in his affidavit was sent by Nevárez after Mojíca's conviction, and
thus does not indicate what Ortiz would have testified about at trial. It is well-settled that
speculative arguments are insufficient to rebut the "strong presumption that counsel's conduct
falls within the wide range of reasonable professional assistance of reasonableness."

---

[9] This Court further notes that as the First Circuit correctly held that Petitioner's motion for new
trial was untimely under Rule 33's seven day period. However, said motion as well as his supplemental
motion for new trial were also untimely under Rule 33's three year period to move for new trial based
upon newly discovered evidence. Petitioner was convicted on June 6, 1997, and his motions were filed
on August 4, and November 8, 2000, that is, over three years from his conviction.

**Civil No. 07-1283 (SEC)** 14

Strickland, 466 U.S. at 700. With regards to Pérez, the fact that the Government called him as a witness, and did not use him later, is a litigation strategy insufficient to support Petitioner's argument. Also, the testimony of the other witnesses versus Pérez and Ortiz's alleged exculpatory testimony would have been an issue of credibility. Presumably, his counsel weighed the prejudice of Pérez and Ortiz's testimony versus its positive impact on Petitioner's defense. As previously stated, the decision to interview potential witnesses, like the decision to present their testimony, must be evaluated in light of whatever trial strategy reasonably competent counsel devised in the context of the particular case, and is peculiarly a question of trial strategy which courts will practically never second guess. Lema, 987 F.2d at 55; see also Walker v. Henderson, 492 F.2d 1311, 1314 (2d Cir. 1974). In the present case, Petitioner did not overcome the presumption that counsel's decision not to call witnesses be considered a sound trial strategy, and that but for counsel's omission he would have received a lesser sentence.

Mojíca also claims that Pérez-Olivo did not challenge Nevárez's hearsay testimony. As discussed before, this claim is procedurally barred. Moreover, the First Circuit held that even if the jury discredited Nevárez's testimony, the jury would still have convicted Mojíca in light of the overwhelming evidence against him. Courts need not address the two prongs of the Strickland test in any specific order, or even analyze both. Strickland, 466 U.S. at 697. If the court is satisfied that the defendant cannot establish either that counsel was deficient or that such deficiency prejudiced the defendant, it may dispose of the claim without further ado. See id. Therefore, even assuming that inadmissible hearsay was improperly introduced at trial, the error was harmless given the overwhelming evidence of his guilt. Thus Mojíca cannot show that its exclusion would have rendered a different verdict.

Lastly, Petitioner alleges that trial counsel failed to make an opening statement. However, upon reviewing the record, this Court notes that trial counsel made his opening statement after the close of the Government's case in chief. Accordingly, this argument lacks merit. See Docket # 244, p. 31.

In light of the foregoing, this Court finds that Petitioner's arguments are insufficient to rebut the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance of reasonableness." Strickland, 466 U.S. at 700.

*Actual innocence*

As previously mentioned, Petitioner also alleges actual innocence. The Supreme Court has held that "[a] prototypical example of 'actual innocence' in a colloquial sense is the case where the State has convicted the wrong person of the crime." Sawyer v. Whitley, 505 U.S. 333, 340 (U.S. 1992). In the *habeas corpus* context, the "federal 'fundamental miscarriage of justice' standard means that petitioner must establish actual innocence." Simpson v. Matesanz, 175 F.3d 200, 210 (1st Cir. Mass. 1999) (citing Schlup v. Delo, 513 U.S. 298, 321 (1995)). Under Schlup, to establish actual innocence, "petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Walker v. Russo, 506 F.3d 19, 21 (1st Cir. Mass. 2007) (citing Gunter v. Maloney, 291 F.3d 74, 83 (1st Cir. 2002); see also United States v. Barrett, 178 F.3d 34, 48 (1st Cir. Me. 1999); Simpson, 175 F.3d at 210; Watkins v. Ponte, 987 F.2d 27, 31 (1st Cir. 1993) (in a *habeas* case, the "petitioner must supplement the constitutional violation with a 'colorable showing of factual innocence'").

In Herrera v. Collins, 506 U.S. 390, 393 (1993), the Supreme Court affirmed the denial of a petition for a writ of *habeas corpus* notwithstanding a claim by the petitioner that new evidence could prove his actual innocence. See also United States v. Sampson, 486 F.3d 13, 27 (1st Cir. Mass. 2007). Claims "of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." Herrera, 506 U.S. at 400. This is due to the fact that the guilt or innocence of the appellant on the factual issues upon which the conviction rests cannot be determined in the Section 2255 proceeding. Nesbitt v. United States, 407 F.2d 397, 398 (6th Cir. Mich. 1969).

"The actual innocence rubric--a phrase courts use differently in different contexts, see

Calderon v. Thompson, 523 U.S. 538, 559-66, 140 L. Ed. 2d 728, 118 S. Ct. 1489 (1998)--has been firmly disallowed by the Supreme Court as an independent ground of habeas relief, save (possibly) in extraordinary  circumstances in a capital case." David v. Hall, 318 F.3d 343, 347-348 (1st Cir. Mass. 2003) (citing Herrera, 506 U.S. at 417). The Court has used an actual innocence test as a safety valve where an issue was not timely presented in the original trial. Schlup, 513 U.S. 298. Notwithstanding, to prevail due to "actual innocence," Petitioner must show that no jury would likely convict him based on the currently known evidence. Thus albeit Ortiz's affidavit would have possibly undermined Nevárez's testimony, the rest of the evidence was sufficient to convict Mojíca.

Similarly, the evidence the Government allegedly failed to produce was not material in a constitutional sense -- that is, that it would not raise a reasonable probability of a different outcome. See Barett, 178 F.3d at 49. Insofar as "'actual innocence' means factual innocence, not mere legal insufficiency," such an assertion of "legal" innocence is not sufficient. Id. (Citing Bousley v. United States, 118 S. Ct. 1604, 1611 (1998)). More so considering that the assertion of actual innocence to excuse a procedural default does not permit a reviewing court to simply dive into defaulted questions of the sufficiency of evidence. Awon v. United States, 308 F.3d 133, 143 (1st Cir. Mass. 2002). Courts have repeatedly held that "[t]he actual innocence exception is quite narrow and seldom used." Awon, 308 F.3d  at 143 (citing Simpson v. Matesanz, 175 F.3d 200, 210 (1st Cir. 1999). "It is reserved for the extraordinary cases of 'fundamentally unjust incarceration.'" Id. (citing Schlup, 513 U.S. at 320-21.

The miscarriage of justice standard requires more than a possibility of prejudice. Burks v. Dubois, 55 F.3d 712, 718 (1st Cir. 1994) (citing Schlup, 115 S. Ct. at 867 & n.45). Thus Petitioner's "speculation about what might -- or might not -- have been the outcome of an error-free trial is an exercise in futility." Id. Moreover, it is not enough to qualify for extraordinary relief under Schlup and its precursors. Merely asserting alleged legal insufficiency in the record does not by any stretch of the imagination show a probability of actual innocence.

**Civil No. 07-1283 (SEC)**                                                                17

**Conclusion**

In light of the above, Petitioner's § 2255 motion is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 26th day of April, 2010.

> S/ *Salvador E. Casellas*
> SALVADOR E. CASELLAS
> United States District Judge